JOEL D. DEUTSCH (Bar No. 102660), JDeutsch@jmbm.com
JON A. WEININGER (Bar No. 216744), JWeininger@jmbm.com
ANDREW I. SHADOFF (Bar No. 272319), AShadoff@jmbm.com
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067-4308
Telephone: (310) 203-8080
Facsimile:  (310) 203-0567

Attorneys for Plaintiff ULTIMATE
BRAND MANAGEMENT, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ULTIMATE BRAND MANAGEMENT, LLC, | Case No. 2:15-CV-10001-BRO-AJW |
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR EVIDENTIARY AND ADVERSE INFERENCE SANCTIONS PURSUANT TO THE COURT'S INHERENT AUTHORITY FOR DEFENDANT'S WILLFUL SPOLIATION OF EVIDENCE** |
| v. | |
| WAL-MART STORES, INC., | |
| Defendant. | [Declaration of Jon A. Weininger filed and [Proposed] Order lodged concurrently] |

Date:       August 7, 2017
Time:       1:30 p.m.
Place:      Courtroom 7C
            350 W. 1st Street
            Los Angeles, 90012
Judge:      Hon. Beverly Reid
            O'Connell

Disc. Cutoff:   July 31,  2017
PTC:            September 11, 2017
Trial:          October 10, 2017

### REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

PRINTED ON
RECYCLED PAPER
LA 33728856v1

**TO DEFENDANT AND ITS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on Monday, August 7, 2017, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 7C at the First Street Federal Courthouse, 350 W. 1st Street, Los Angeles, CA 90012, before the Honorable Beverly Reid O'Connell, United States District Court Judge, Plaintiff Ultimate Brand Management, LLC ("UBM") will and hereby does move this Court for an order assessing evidentiary and/or adverse inference sanctions against Defendant Wal-Mart Stores, Inc. ("Walmart") for its willful spoliation of evidence in this case.

This Motion is made pursuant to the Court's inherent authority to impose sanctions for a party's spoliation of evidence and is based on Walmart's destruction of evidence demonstrating its unlawful use of UBM's "MMA ELITE" trademark to sell non-MMA ELITE apparel in its stores.

This Lanham Act and common law unfair competition case centers on Walmart's unauthorized use of signs bearing UBM's MMA ELITE trademark to sell non-licensed apparel that Walmart intentionally caused to look virtually indistinguishable from licensed MMA ELITE apparel that Walmart previously sold.  UBM sued Walmart after it learned that Walmart continued to display MMA ELITE signs in its stores after it stopped selling licensed MMA ELITE apparel, but while continuing to sell the lookalike apparel. Walmart was on notice that its use of MMA ELITE signs in its stores, and the manner in which it displayed the lookalike apparel in proximity to those signs, was a central disputed issue in this case as of January 4, 2016, when UBM served Walmart with its Complaint.

At that time, Walmart had an affirmative obligation to preserve all evidence that it knew or reasonably should have known might be potentially relevant.  Walmart breached this duty by destroying evidence of its actual use of MMA ELITE signs in its stores.  Specifically, after initially denying

Jeffer Mangels
Butler & Mitchell LLP

JMBM

that any MMA ELITE signs were up in its stores, Walmart later realized

████████████████████████████████████████████████████████

████████████████████████████████████████ But rather

than preserve its actual use and display of those signs and surrounding

apparel in its stores, as it was obligated to do, Walmart ████████████

████████████████████████████████████████

████████████████████████████████████████████████████████

As a result of Walmart's spoliation of this evidence, UBM's ability to prosecute its case has been severely and irreparably prejudiced. Walmart has destroyed the only remaining direct evidence that would illustrate how it was actually using the signs in its stores as late as 2016 and 2017.

Accordingly, UBM requests that the Court assess sanctions against Walmart for its willful spoliation of evidence. The requested sanctions are intended to be tailored to the prejudice inflicted upon UBM by Walmart's violation of its preservation obligations and to prevent Walmart from reaping any evidentiary rewards associated with its spoliation.

In particular, UBM asks the Court to assess the following sanctions:

1.     Walmart's use of MMA ELITE signs in 2016 and 2017 should be deemed to constitute willful infringement of UBM's MMA ELITE trademark, and Walmart should be prevented from presenting any evidence, testimony, or argument that its use of MMA ELITE signs in 2016 and 2017 was not willful infringement of UBM's MMA ELITE trademark; and

2.     Walmart should be prevented from presenting evidence, testimony, or argument regarding when, where, or how it used or displayed MMA ELITE signs, or when, where, or how it used or displayed any non-licensed apparel similar in appearance and style to MMA ELITE branded apparel that was sold in its stores in 2016 and 2017.

PRINTED ON
RECYCLED PAPER
LA 33728856v1

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

1    In addition, UBM requests that the Court impose adverse inference

2    sanctions by giving the following instructions to the jury at the time of trial:

3    1.    "Walmart had a legal obligation to preserve all relevant evidence

4    after being served with the Complaint.  Walmart violated this obligation by

5    intentionally destroying evidence that would have showed how Walmart was

6    using MMA ELITE signs in its stores to sell similar looking non-MMA ELITE

7    apparel.  You may infer from Walmart's destruction of this evidence that

8    Walmart intentionally used MMA ELITE signs to attract customers to

9    Walmart's similar looking non-MMA ELITE apparel."

10    2.    "Walmart had a legal obligation to preserve all relevant evidence

11    after being served with the Complaint.  Walmart violated this obligation by

12    intentionally destroying evidence that would have showed how Walmart was

13    using MMA ELITE signs in its stores to sell similar looking non-MMA ELITE

14    apparel.  You may infer from Walmart's conduct that the evidence destroyed

15    would have been favorable to UBM's case and harmful to Walmart's case."

16    Pursuant to Local Rule 7-3, counsel for UBM and Walmart met and

17    conferred, and discussed the substance of this Motion.  [*See* Declaration of

18    Jon A. Weininger ("Weininger Decl."), ¶ 19.]

19    This Motion is based on this Notice of Motion and Motion, the

20    appended Memorandum of Points and Authorities, the concurrently filed

21    Weininger Decl. and exhibits thereto, any reply submission that UBM may

22    file, all matters of which the Court may take judicial notice, the pleadings

23    and papers on file in this action, and any further oral or written evidence

24    that the Court may consider before or at any hearing on this Motion.

25    DATED:  July 5, 2017        JEFFER MANGELS BUTLER & MITCHELL LLP

26    /s/ Jon A. Weininger

27    JON A. WEININGER
      Attorneys for Plaintiff ULTIMATE BRAND

28    MANAGEMENT, LLC

PRINTED ON
RECYCLED PAPER
LA 33728856v1

JMBM  Jeffer Mangels
      Butler & Mitchell LLP

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................10

II.  FACTS............................................................................12

    A.   UBM's MMA ELITE Trademark ................................12

    B.   MMA ELITE Was Sold Exclusively at Walmart and Became Very Popular with Walmart's Customers....................................13

    C.   Walmart's Scheme to Divert Customers From MMA ELITE Apparel to Its Own Private Label Products................................13

    D.   The MMA ELITE Signs ............................................14

    E.   In December 2015, UBM Filed This Lawsuit ..............................15

    F.   ████████████████████████ ████████████████████████...........................15

    G.   In February 2017, Walmart Informed UBM For the First Time That It Had ████████████████..................17

    H.   Walmart Ignored UBM's Attempts to Address This Issue..........17

    I.   Walmart Refused to Permit Questioning Regarding the Reasons ████████████████........................18

    J.   Counsels' Meet and Confer .......................................18

III. THE COURT HAS THE INHERENT AUTHORITY TO IMPOSE SANCTIONS FOR A PARTY'S SPOLIATION OF EVIDENCE .............18

IV.  WALMART COMMITTED WILLFUL SPOLIATION...........................19

    A.   Walmart Was Obligated to Preserve Evidence Relating to Its Use of MMA ELITE Signs in Its Stores.................................20

    B.   Walmart's Use of MMA ELITE Signs in the Marketplace That It Created is Critically Relevant to This Case.....................21

    C.   Walmart Willfully Destroyed Relevant Evidence......................23

        1.   Walmart's Actions Constitute Willful Spoliation.............23

JMBM | Jeffer Mangels
Butler & Mitchell LLP

2.      Walmart Also Failed to Inform UBM That ███████
███████████████████████████████████.......... 24

3.      Walmart's History of Spoliation In Other Cases
Confirms That It Did Not Act Innocently Here ............... 26

D.      Walmart's Spoliation Severely Prejudices UBM .........................27

V.      EVIDENTIARY AND ADVERSE INFERENCE SANCTIONS ARE
NECESSARY TO LEVEL THE PLAYING FIELD ................................. 28

A.      Evidentiary Sanctions are Necessary ......................................... 28

B.      Adverse Inference Sanctions Also Are Necessary ...................... 31

VI.     CONCLUSION ..................................................................................... 33

JMBM | Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 33728856v1

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abdulahi v. Wal-Mart Stores East, L.P.,*
    76 F.Supp.3d 1393 (N.D. Ga. 2014) ......................................................... 26

*Aktas v. JMC Devel. Co., Inc.,*
    877 F.Supp.2d 1 (N.D.N.Y. 2012) .................................................. 24, 31, 32

*Apple Inc. v. Samsung Electronics Co., Ltd.,*
    881 F.Supp.2d 1132 (N.D. Cal. 2012) ..................................................... 20

*Britton v. Wal-Mart Stores East, L.P.,*
    No. 4:11cv32-RH/WCS, 2011 WL 3236189
    (N.D. Fla. June 8, 2011) ........................................................................ 26

*Columbia Pictures, Inc. v. Bunnell,*
    No. 2:06-cv-01093 FMC-JCx, 2007 WL 4877701
    (C.D. Cal. Dec. 13, 2007) ............................................................ 19, 21, 30

*Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc.,*
    101 F.Supp.3d 856 (C.D. Cal. 2015) ........................................................ 19

*Crown Battery Mfg. Co. v. Club Car, Inc.,*
    185 F.Supp.3d 987 (N.D. Ohio 2016) ...................................................... 24

*Empire, Inc. v. Wal-Mart Stores, Inc.,*
    188 F.R.D. 478 (E.D. Ky. 1999) .............................................................. 27

*First Sr. Fin. Grp. LLC v. Watchdog,*
    No. 12-cv-1247, 2014 WL 1327584 (E.D. Pa. Apr. 3, 2014) ............... 24, 25

*Gaffield v. Wal-Mart Stores East, LP,*
    616 F.Supp.2d 329 (N.D.N.Y. 2009) ....................................................... 26

*Garcia v. City of Santa Clara,*
    No. 10-cv-02424-SI, 2017 WL 1398263
    (N.D. Cal. Apr. 19, 2017) .................................................................. 23, 24

*Glover v. Bic Corp.,*
    6 F.3d 1318 (9th Cir. 1993) ..................................................................... 31

*Greenwalt v. Wal-Mart Stores, Inc.,*
    253 Neb. 32, 567 N.W.2d 560 (Neb. 1997) .............................................. 27

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 33728856v1

*GTFM, Inc. v. Wal-Mart Stores, Inc.,*
   No. 98 CIV. 7724 RPP, 2000 WL 335558
   (S.D.N.Y. Mar. 30, 2000)............................................................. 26

*In re Napster Copyright Litig.,*
   462 F.Supp.2d 1060 (N.D. Cal. 2006) ................................... 29, 31

*Leon v. IDX Sys. Corp.,*
   464 F.3d 951 (9th Cir. 2006)........................................... 19, 23, 24

*McDonald v. Wal-Mart Stores East, LP,*
   No. 3:07cv425, 2008 WL 153783 (E.D. Va. Jan. 14, 2008) ................... 26

*Patton v. Wal-Mart Stores, Inc.,*
   No. 2:12-cv-02142-GMN-VCF, 2013 WL 6158467
   (D. Nev. Nov. 20, 2013)............................................................. 26

*Perez v. Shippers Transport Express, Inc.,*
   CV 13-4255 BRO (PLAx), 2014 WL 12591809
   (C.D. Cal. July 8, 2014) ...................................................... passim

*Reed v. KinderCare Learning Centers,*
   No. C15-5634BHS, 2016 WL 6805336
   (W.D. Wash. Nov. 17, 2016) ............................................... passim

*Sanchez v. Rodriguez,*
   298 F.R.D. 460 (C.D. Cal. 2014) ....................................... 23, 24

*Silvestri v. Gen. Motors Corp.,*
   271 F.3d 583 (4th Cir. 2001) ........................................... 24, 25

*Star Envirotech, Inc. v. Redline Detection, LLC,*
   No. SA CV 12-01861-JGB, 2015 WL 9093561
   (C.D. Cal. Dec. 16, 2015)................................................... 20, 21

*Stedeford v. Wal-Mart Stores, Inc.,*
   No. 2:14-cv-01429-JAD-PAL, 2016 WL 3462132
   (D. Nev. June 24, 2016) .............................................. 26, 28, 29

*Wagner v. Sea Esta Motel I,*
   No. 13-81-RGA, 2014 WL 4247731 (D. Del. Aug. 26, 2014).................... 32

*Wilson v. Wal-Mart Stores, Inc.,*
   199 F.R.D. 207 (S.D. Tex. 2001)............................................ 26

PRINTED ON
RECYCLED PAPER
LA 33728856v1

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

1   *Woodard v. Wal-Mart Stores East, LP,*
2       801 F.Supp.2d 1363 (M.D. Ga. 2011) ....................................................... 26

3   *Zubulake v. UBS Warburg LLC,*
4       220 F.R.D. 212 (S.D.N.Y. 2003)................................................................25

5

6   **OTHER AUTHORITIES**

7   C.D. Cal. L.R. 7-3 .......................................................................................4, 18

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRINTED ON
RECYCLED PAPER
LA 33728856v1

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This is a trademark infringement and unfair competition case concerning UBM's registered trademark "MMA ELITE."  The crux of this case is Walmart's unauthorized use of large, wall-mounted signs featuring the MMA ELITE mark to lure consumers to Walmart's private label and generic apparel that was intentionally designed to look like licensed MMA ELITE apparel that Walmart had previously sold in its stores.  UBM brings this Motion because Walmart destroyed evidence of its actual continuing use of those signs in its stores for nearly one year after the Complaint was filed.

Before this dispute arose, UBM licensed third-party manufacturers to supply Walmart with apparel products sold under the MMA ELITE brand. These products were geared toward fans of mixed martial arts fighting events, including fights sponsored by the Ultimate Fighting Championship ("UFC"), and others interested in the ultimate fighting lifestyle.  Due to UBM's efforts to develop and promote the MMA ELITE brand, UBM and Walmart enjoyed several years of robust sales that in the aggregate exceeded well over one hundred million dollars of MMA ELITE products at retail.

Walmart, however, is a cutthroat retailer that is always looking to lower retail prices while maintaining margins.  Sensing an opportunity to capitalize on the success of the MMA ELITE brand and goodwill that UBM developed with the Walmart customer, Walmart decided to re-introduce its own private label and generic lines of apparel that featured graphics similar to MMA ELITE apparel.  Walmart's plan was to replace MMA ELITE entirely on its floors with its own lines of similar product, but not immediately. Instead, Walmart slowly introduced its lookalike products – offered at lower retail prices – next to MMA ELITE products.  Only after Walmart began to phase out specific categories of MMA ELITE products on its floors, in favor

PRINTED ON
RECYCLED PAPER
LA 33728856v1

of its lookalike products, did Walmart decide to start displaying the large, wall-mounted MMA ELITE signs at issue in its stores across the country. Walmart kept those signs up its stores until as recently as January 2017, years after it had stopped ordering any new MMA ELITE products.

In its Complaint filed in December 2015, UBM alleged that Walmart misused MMA ELITE signs as part of a scheme to willfully trade off the goodwill of MMA ELITE to sell tens of millions of dollars of Walmart's private label and generic apparel.  UBM also alleged that, as of the date of the Complaint, Walmart continued to misuse MMA ELITE signs to sell its lookalike apparel.  In its Answer, Walmart denied that it continued to use or display any MMA ELITE signs in its stores.

Unbeknownst to UBM, Walmart's denial turned out to be false. ███

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ Far from complying with its preservation obligations, Walmart destroyed the only remaining evidence that would demonstrate how it was actually using MMA ELITE signs in commerce.

The evidence that Walmart failed to preserve was the most direct evidence of this important aspect of UBM's claims.  Walmart understood this fact, yet took no steps to preserve the evidence.  Walmart did not even alert

UBM to the fact that signs were still up in its stores.  Walmart's failures amount to willful spoliation.

Walmart cannot claim ignorance of its affirmative duty to preserve relevant evidence or profess innocence.  For at least two decades, courts across the country have sanctioned Walmart for destroying relevant evidence. *See infra*, Part IV.C.3.  Walmart's conduct here is simply the latest chapter in a well-established pattern of spoliation, which makes the imposition of meaningful evidentiary sanctions appropriate.

Meaningful sanctions also are necessary because Walmart's willful spoliation has severely prejudiced UBM's ability to prosecute its case.  Walmart has robbed UBM of the most direct evidence of Walmart's actual use of MMA ELITE signs.  The Court should grant this Motion assess the requested evidentiary and adverse inference sanctions against Walmart to remediate that prejudice.

## II.    FACTS

### A.    UBM's MMA ELITE Trademark

UBM owns the federally registered trademark "MMA ELITE" and other common law intellectual property rights.  [*See* Docket No. 1 at ¶ 3.] From 2009 until its business was destroyed by the unlawful acts of Walmart alleged herein, UBM sold and licensed others to sell apparel and associated products under the MMA ELITE mark geared toward fans of mixed martial arts and others interested in the ultimate fighting lifestyle.  [*See id*. at ¶ 7.]

UBM spent substantial time and money creating the MMA ELITE brand and developing consumer goodwill in its branded apparel and products.  [*See id*. at ¶ 8.]  UBM also spent substantial resources marketing and advertising the MMA ELITE brand.  Among other things, UBM became an official partner of the UFC, displayed the MMA ELITE mark in the

PRINTED ON RECYCLED PAPER
LA 33728856v1

"Octagon" on televised UFC events, and affixed licensed UFC stickers on much of its apparel sold at Walmart.  [*See id*.]  UBM also sponsored numerous fighters and athletes who wore MMA ELITE branded clothing and equipment at public events, and sponsored gyms featuring mixed martial arts and/or ultimate fighting training and related programs.  [*See id*.]

**B.      MMA ELITE Was Sold Exclusively at Walmart and Became Very Popular with Walmart's Customers**

The MMA ELITE brand became so well-known that Walmart selected MMA ELITE as its exclusive source of branded mixed-martial arts/ultimate fighting lifestyle themed apparel to sell in its stores.  [*Id*. at ¶ 10.]

MMA ELITE apparel was popular with Walmart's customers.  Between 2009 and mid-2013, Walmart sold millions of units of MMA ELITE apparel generating retail sales exceeding one hundred million dollars.  [*See id.* at ¶ 11.]  Those revenues produced millions of dollars in royalty income to UBM.

**C.      Walmart's Scheme to Divert Customers From MMA ELITE Apparel to Its Own Private Label Products**

Despite the success of MMA ELITE, Walmart thirsted for ever greater profits.  Recognizing that MMA ELITE royalties prevented reductions in retail prices without impacting margins, Walmart decided to replace MMA ELITE with similar-looking apparel sold under Walmart's own private label and/or as generic products with no label (collectively, the "Walmart Apparel").  [*Id*.]

Moreover, to satisfy its customers' established preference for MMA ELITE products, Walmart intentionally selected the same manufacturer that designed and supplied the MMA ELITE apparel.  This allowed Walmart to offer its Walmart Apparel with designs and styles virtually indistinguishable from MMA ELITE, but at a steep reduction in price.  [*Id*. at ¶ 14.]

PRINTED ON RECYCLED PAPER
LA 33728856v1

1  Walmart's plan was to entirely replace MMA ELITE with Walmart

2  Apparel, but not immediately.  [*Id.* at ¶¶ 11-15.]  Instead, Walmart slowly

3  introduced its lookalike Walmart Apparel next to MMA ELITE products in

4  order to use the goodwill of MMA ELITE to entice customers to the Walmart

5  Apparel.  [*See id.* at ¶ 14.]

6      **D.**   **The MMA ELITE Signs**

7  In July 2012, months after Walmart decided to replace certain MMA

8  ELITE products with similar Walmart Apparel, and when the future of the

9  MMA ELITE brand at Walmart was in serious doubt internally, Walmart

10  decided to start displaying large (3' x 3') signs bearing the MMA ELITE

11  trademark on the "back wall" above the tee shirts displayed in its men's

12  department.  [Declaration of Jon A. Weininger ("Weininger Decl."), Ex. 3

13  (Excerpts of the Transcript of the Deposition of David Hopper, taken May 5,

14  2017 ("Hopper Tr.")) at 152:3-157:19; Ex. 14.[1]]  The signs were displayed high

15  up on the wall, making them visible to Walmart's customers from afar.  [*See*

16  Exs. 12-13; Ex. 3 (Hopper Tr.) at 40:14-41:16, 48:16-24.]

17  ███████████████████████████████████████████

18  ██████  [Ex. 6.]  However, Walmart continued to use the MMA ELITE

19  signs.  [Docket No. 1 at ¶ 16; *see infra* at Part II.F.]  In 2014, after UBM

20  became aware of this fact, it told Walmart to remove all of the signs from its

21  stores.  [Ex. 5 (Excerpts of the Transcript of the Deposition of Alden

22  Halpern, taken Feb. 27, 2017 ("Halpern Tr.")) at 156:7-159:25.]  Walmart

23  ignored the request.  [*See id.*]

24

25

26

27  _____

28  [1] All references to Exhibits ("Ex. _") are to exhibits to the Weininger Decl.

PRINTED ON
RECYCLED PAPER
LA 33728856v1

### E.     <u>In December 2015, UBM Filed This Lawsuit</u>

On December 30, 2015, UBM filed its Complaint in this action. [Docket No. 1.]  Walmart was served on January 4, 2016.  [Docket No. 8.] Walmart filed its Answer on February 24, 2016.  [Docket No. 16.]

The core of UBM's case is its allegation that Walmart misused signs bearing UBM's MMA ELITE mark in its stores to attract customers to, and sell, the Walmart Apparel.

In particular, UBM alleges that Walmart lured customers to Walmart Apparel by displaying signs bearing the MMA ELITE mark above and near the Walmart Apparel.  [*See* Docket No. 1 at ¶¶ 13-20.]  UBM alleges that Walmart misused MMA ELITE signs in this fashion during the time (a) that Walmart sold both MMA ELITE branded apparel and Walmart Apparel (*id. at ¶ 14*), and (b) after Walmart stopped purchasing MMA ELITE apparel and sold only Walmart Apparel (*id. at ¶ 16*).

In its Answer, Walmart denied UBM's allegations that Walmart was continuing to display MMA ELITE signs in its stores.  [*See* Docket No. 16 at p. 3 (denying ¶ 16).]  Because Walmart denied this allegation, UBM had no reason to suspect that Walmart might still be using the signs.

**F.**



[*See* Ex. 1 (Excerpts from the Transcript of the Deposition of Robert Jay Howell, taken May 2, 2017 ("Howell Tr.")), at 22:14-21, 24:11-25:10.]

[*Id.*

Jeffer Mangels
Butler & Mitchell LLP

JMBM

PRINTED ON
RECYCLED PAPER
LA 33728856v1

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

1   at 26:24-27:12, 52:14-53:11; Ex. 2 (Excerpts from the Transcript of the

2   Deposition of Lindsey Blakely, taken May 2, 2017 ("Blakely Tr.")), at 13:25-

3   14:2; Ex. 9.]

4   ███████████████████████████████████████████████

5   ███████████████████████████████████████████

6   ████████████████████████████████████

7   ███████████████████████████████████████████

8   ██████████████████████████ [*See* Ex. 9; Ex. 1

9   (Howell Tr.) at 51:8-14.] ████████████████████████

10  ███████████████████████████████████████████████

11  █████████████████████████████████████████

12  █████████████████████████████████████████

13  █████████████████████████ [Ex. 9 (emphasis added).]

14  ██████████████████████████████████████████

15  █████████████████████████████████████████

16  ███████████████████████████████████████████████

17  ██████████████ [Ex. 2 (Blakely Tr.) at 72:21-73:9; Ex. 9.]

18  ███████████████████████████████████████████████

19  ███████████████████████████████████████████████

20  █████████████████████████ [Ex. 2 (Blakely Tr.) at 22:10-

21  24:1, 42:6-14, 80:23-81:2, 87:17-21; Ex. 10.] ██████████████

22  ███████████████████████████████████████████████

23  ████████████████████████████████████████

24  ██████████ [Ex. 10.]

25  ███████████████████████████████████████████

26  ██████████████████████████████████████████

27  ████████████ [Ex. 2 (Blakely Tr.) at 52:13-25, 55:21-56:7, 61:2-9, 63:11-

28  64:24, 96:19-3; Ex. 11.]

PRINTED ON
RECYCLED PAPER
LA 33728856v1



1  ███████████████████████ [Ex. 2

2  (Blakely Tr.) at 65:23-66:19.] ████████████████

3  ████████████████ [Ex. 8.] ████████████

4  ████████████████████████

5  ███████████ [*Id.*]

6  ████████████████████████

7  ████████████████████

8  ██████ [*See* Ex. 1 (Howell Tr.) at 51:15-24; Ex. 2 (Blakely Tr.) at 77:5-25.]

9  **G.    In February 2017, Walmart Informed UBM For the First**

10     **Time That It Had** ████████████████

11  On or about February 3, 2017, Walmart produced documents to UBM.

12  [Weininger Decl., ¶ 17.]  Among those documents were ████████████

13  ████████████████████████

14  ████████████████ [*Id.*]

15  ████████████████████████

16  ████████████████████████

17  ████████████████████ [*Id.*]

18  **H.    Walmart Ignored UBM's Attempts to Address This Issue**

19  On April 21, 2017, UBM's counsel wrote a letter to Walmart's counsel

20  that stated, in part:  "If Walmart removed MMA ELITE signs from its stores

21  after this litigation was filed, without providing us advance notice and/or

22  documenting where and how those signs were used or displayed in its stores,

23  please let us know, as that would raise a different issue that we would

24  address separately."  [Weininger Decl., ¶ 18, Ex. 16.]

25  Walmart's counsel did not respond to that letter.  [*Id.*]

26

27

28

JMBM | Jeffer Mangels Butler & Mitchell LLP

**I.      Walmart Refused to Permit Questioning Regarding** ████

████████████████████████

In May 2017, Walmart produced two Rule 30(b)(6) witnesses ostensibly to answer questions regarding ███████████████████████ ████  [Ex. 1 at 11:17-14:1; Ex. 2 at 11:4-24.]  However, ██████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████. [*See, e.g.*, Ex. 1 at 24:16-21, 32:21-33:5, 39:22-40:6; Ex. 2 at 82:4-14.]

**J.      Counsel Timely Met and Conferred**

On June 9, 2017, pursuant to Local Rule 7-3, counsel for UBM and Walmart met and conferred to thoroughly discuss the substance of the Motion in an attempt to reach resolution.  [Weininger Decl., ¶ 19.]  The parties were unable to resolve any of the issues raised in this Motion.  [*Id.*]

**III.   THE COURT HAS THE INHERENT AUTHORITY TO IMPOSE SANCTIONS FOR A PARTY'S SPOLIATION OF EVIDENCE**

"Spoliation of evidence is the 'destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation.'"  *Reed v. KinderCare Learning Centers*, No. C15-5634BHS, 2016 WL 6805336, *2 (W.D. Wash. Nov. 17, 2016)*, *quoting Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009). "When a party fails to meet its duty to preserve evidence, the opposing party may move the court to sanction that party for destroying evidence."  *Perez v.*

PRINTED ON
RECYCLED PAPER
LA 33728856v1

JMBM | Jeffer Mangels Butler & Mitchell LLP

1   *Shippers Transport Express, Inc.*, CV 13-4255 BRO (PLAx), 2014 WL

2   12591809, *3 (C.D. Cal. July 8, 2014).[2]

3     "[A] district court can sanction a party who has despoiled evidence"

4   under "the inherent power of federal courts to levy sanctions in response to

5   abusive litigation practices." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th

6   Cir. 2006).  "The court's inherent authority to impose sanctions for the

7   wrongful destruction of evidence includes the power to exclude evidence

8   that, given the spoliation, would 'unfairly prejudice an opposing party.'"

9   *Perez*, 2014 WL 12591809, at *9, *quoting In re Napster Copyright Litig.*,

10   462 F.Supp.2d 1060, 1077 (N.D. Cal. 2006).

11     In particular, "[a] court may sanction spoliation by: imposing

12   monetary sanctions; instructing the jury to draw an adverse inference

13   against the despoiling party; excluding testimony based on despoiled

14   evidence proffered by the despoiling party; or, if willfulness is found,

15   entering default judgment against the despoiling party." *Consumer Fin.*

16   *Prot. Bureau v. Morgan Drexen, Inc.*, 101 F.Supp.3d 856, 868 (C.D. Cal.

17   2015), *quoting Columbia Pictures, Inc. v. Bunnell*, No. 2:06-cv-01093 FMC-

18   JCx, 2007 WL 4877701, *4 (C.D. Cal. Dec. 13, 2007).

19     As demonstrated below, Walmart has committed willful spoliation of

20   relevant evidence to UBM's prejudice, and, accordingly, evidentiary and

21   adverse inference sanctions are appropriate.

22

23   **IV. WALMART COMMITTED WILLFUL SPOLIATION**

24     "Courts typically apply the following test to determine whether to

25   impose sanctions for spoliation, requiring the party seeking sanctions to

26    

27   [2] Because this Motion involves a request that the Court exercise its inherent

authority in response to Walmart's spoliation of relevant evidence, "Rules

28   37-1 and 37-2 do not apply." *Perez*, 2014 WL 12591809, at *8.

PRINTED ON RECYCLED PAPER

LA 33728856v1

establish: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind' and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Star Envirotech, Inc. v. Redline Detection, LLC*, No. SA CV 12-01861-JGB (DFMx), 2015 WL 9093561, *5 (C.D. Cal. Dec. 16, 2015).  All three factors are established here.

### A.    Walmart Was Obligated to Preserve Evidence Relating to Its Use of MMA ELITE Signs in Its Stores

"[A]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Perez*, 2014 WL 12591809, at *4, *quoting *Napster*, 462 F.Supp.2d at 1067.  This obligation requires a company to not only instruct its employees to preserve evidence, but also to "verify whether its employees were actually complying" with those instructions.  *Apple Inc. v. Samsung Electronics Co., Ltd.*, 881 F.Supp.2d 1132, 1147 (N.D. Cal. 2012).

The *Reed* case is instructive.  There, the plaintiff alleged claims for, among other things, disability discrimination and failure to accommodate relating to the defendant's facility where she worked.  2016 WL 6805336, at *1-2.  The plaintiff notified defendant that she wanted to inspect the facility. *Id.* at *2.  The defendant objected to that request and, two days later, "closed the [facility] without notice to [the plaintiff]." *Id.*  The following week, the defendant told the plaintiff "that the fixtures/furniture were removed from the [facility]" and that "an inspection would not be possible." *Id.*

In finding that the defendant had committed spoliation of evidence, the district court concluded that the defendant "acted in at least a grossly negligent, irresponsible and cavalier manner" and held "that an adverse instruction may be appropriate." *Id.*  The court reserved its decision of the

PRINTED ON RECYCLED PAPER
LA 33728856v1

1   language of the instruction until the plaintiff finished collecting evidence

2   from other facilities that were potentially similar to the facility at issue.  *Id.*

3   Here, Walmart had an undeniable obligation to preserve and not

4   significantly alter physical evidence relating to its use and display of MMA

5   ELITE signs and nearby apparel.  As in *Reed*, Walmart was put on notice by

6   UBM's Complaint that this evidence related to a crucial issue in the case.

7   ████████████████████████████████████

8   ████████████████████████████████████

9   ████████████████████████████████████

10  ████████████████████████████████████

11  ████████   Just like in *Reed*, where the defendant permanently altered the

12  physical situation critical to the plaintiff's claims against it, Walmart's

13  actions in this case violated its obligation to preserve all such relevant

14  (indeed, critical) evidence.  *See Reed*, 2016 WL 6805336, at *2.

15  **B.      Walmart's Use of MMA ELITE Signs in the Marketplace**

16  **That It Created is Critically Relevant to This Case**

17  "Spoliation occurs when a party destroys evidence after receiving some

18  notice that the evidence was *potentially relevant* to litigation."  *Columbia*

19  *Pictures*, 2007 WL 4877701, at *4 (emphasis added).

20  As alleged in UBM's Complaint, Walmart's use of MMA ELITE signs

21  and display of Walmart Apparel formed the very core of UBM's claims of

22  wrongdoing by Walmart.  [*See* Docket No. 1 at ¶¶ 14, 16.]

23  A reasonable jury could find that the destroyed evidence supported

24  UBM's case.  *See Star Envirotech*, 2015 WL 9093561, at *5 (evidence is

25  "relevant" to a claim if "a reasonable trier of fact could find that it would

26  support that claim").  If Walmart believed that its use of MMA ELITE signs

27  was innocent or helpful to its defense of UBM's claims, Walmart doubtless

28  would have taken photographs of that evidence to support its contention.

PRINTED ON
RECYCLED PAPER
LA 33728856v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1 ███████████████████████████████████████████

2 ███████████████████████████████████████████

3 ██████████████████████████  From these facts alone, a reasonable

4 jury could conclude that the use of MMA ELITE signs would have supported

5 UBM's claims.

6     Moreover, UBM's pre-filing investigation revealed that Walmart stores

7 used MMA ELITE signs by displaying them in proximity to Walmart

8 Apparel.  [*See* Docket No. 1 at ¶¶ 14-16.]  A jury could reasonably conclude

9 that other Walmart stores displayed MMA ELITE signs and Walmart

10 Apparel in similar ways.  *See Perez*, 2014 WL 12591809, at *10 (it was

11 "reasonable to presume that other [deleted text] messages could contain

12 similar content" as the few text messages defendants had produced).

13     Walmart might argue that it did preserve evidence because it

14 maintained the signs themselves.  This argument would have no merit.  As

15 made clear in UBM's Complaint, and explained in *Reed*, the relevant

16 evidence is the actual *use* of MMA ELITE signs and display of apparel in

17 proximity to those signs at Walmart's stores.  Stated otherwise, the signs

18 themselves, divorced from the marketplace in which they and nearby apparel

19 were displayed, are useless.  Merely saving some of the signs is "ineffective

20 and insufficient to satisfy [Walmart's] duty to preserve" the critical evidence

21 of its use of MMA ELITE signs in its stores.  *Perez*, 2014 WL 12591809, at *5.

22     Walmart also might argue that the destroyed evidence would not have

23 revealed anything helpful to UBM, because Walmart's sales of Walmart

24 Apparel in 2016 and 2017 were not significant.  That fact would not relieve

25 Walmart of its preservation obligation.  Whether destroyed evidence

26 supports a party's position "is immaterial for purposes of imposing

27 sanctions; what is important is that the destroyed evidence was relevant to

28 the underlying dispute." *Id.* at *7.  Here, it is indisputable that the evidence

PRINTED ON

RECYCLED PAPER

LA 33728856v1

JMBM | Jeffer Mangels Butler & Mitchell LLP

1   Walmart destroyed was relevant.  And, because Walmart destroyed that

2   evidence, UBM has been prevented from discovering whether or not

3   Walmart did, in fact, display Walmart Apparel near the signs.

### C.   **Walmart Willfully Destroyed Relevant Evidence**

#### 1.   **Walmart's Actions Constitute Willful Spoliation**

6   "A court need not find that a party acted in 'bad faith' in order to

7   impose sanctions for spoliation of evidence." *Perez,* 2014 WL 12591809, at

8   *3.  Rather, "willfulness or fault can suffice." *Garcia v. City of Santa Clara,*

9   No. 10-cv-02424-SI, 2017 WL 1398263, *2 (N.D. Cal. Apr. 19, 2017).  "A

10  party's destruction of evidence qualifies as willful spoliation if the party has

11  'some notice that the documents were *potentially* relevant to the litigation

12  before they were destroyed.'" *Leon,* 464 F.3d at 958 (citation omitted; italics

13  in original).  Alternatively, a finding of "disobedient conduct not shown to be

14  outside the party's control is by itself sufficient to establish willfulness, bad

15  faith, or fault." *Sanchez v. Rodriguez,* 298 F.R.D. 460, 463 (C.D. Cal. 2014).

16  Under any of these standards, Walmart's behavior warrants sanctions.

17  Walmart acted with willfulness, if not bad faith, in ███████████████

18  ████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████

21  ████████████████████████████████████████

22      ███████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  ████████████████   [*See, e.g.,* Ex. 7.]  This fact further demonstrates

25  Walmart's willingness to preserve evidence it believes is helpful while

26  destroying evidence it thinks is harmful.

27  Walmart knew from UBM's Complaint that its use of MMA ELITE

28  signs was relevant to the litigation.  Yet, eight months later, after realizing

PRINTED ON
RECYCLED PAPER
LA 33728856v1

Jeffer Mangels
Butler & Mitchell LLP

JMBM

1   the extent to which signs were still being used in its stores, Walmart

2   destroyed that evidence without any notice to UBM.  This level of willfulness

3   is sufficient for the Court to impose sanctions.  *Leon*, 464 F.3d at 958

4   (spoliation "qualifies as willful" if the party knew the evidence was

5   potentially relevant); *Garcia*, 2017 WL 1398263, at *2 ("The court need only

6   find that the offending party destroyed evidence with notice that the

7   evidence was potentially relevant to the litigation.").

8          In addition, all of the subject evidence was undeniably within

9   Walmart's control at the time Walmart destroyed it.  Therefore, Walmart's

10   destruction of that evidence is "sufficient to establish willfulness, bad faith,

11   or fault" for this reason as well.  *See Sanchez*, 298 F.R.D. at 463.

**2.      Walmart Also Failed to Inform UBM That** ████████

████████████████████████████████████████

14          At a bare minimum, Walmart had a duty to alert UBM that ██████

15   ████████████████████████████████, and to provide UBM with

16   "an adequate and meaningful opportunity to inspect" those stores.  *See*

17   *Aktas v. JMC Devel. Co., Inc.*, 877 F.Supp.2d 1, 13 (N.D.N.Y. 2012).  Courts

18   have held that, even "[i]f a party cannot fulfill [its] duty to preserve because

19   he does not own or control the evidence, he *still has an obligation to give the*

20   *opposing party notice of access to the evidence or of the possible*

21   *destruction of the evidence* if the party anticipates litigation involving that

22   evidence." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001)

23   (emphasis added); *see also First Sr. Fin. Grp. LLC v. Watchdog*, No. 12-cv-

24   1247, 2014 WL 1327584, *9 (E.D. Pa. Apr. 3, 2014) (party has a "duty to

25   preserve the evidence, or at least notify opposing counsel of any risk of

26   destruction").  Notifying opposing counsel of the presence of evidence is a

27   "minimally burdensome duty." *Crown Battery Mfg. Co. v. Club Car, Inc.*,

28   185 F.Supp.3d 987, 998 (N.D. Ohio 2016).

JMBM | Jeffer Mangels Butler & Mitchell LLP

Logically, this obligation applies even more strongly where, as here, a party *does* control the evidence prior to its destruction.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████ Especially in light of Walmart's unequivocal denial of UBM's allegation that Walmart still used MMA ELITE signs, ██████████████████████████████████████████████ is indefensible.

Walmart likely will argue that it had no affirmative duty to "create" evidence, such as photographs capturing Walmart's use of MMA ELITE signs. Walmart would be wrong because UBM is not suggesting it had to "create" any evidence. Rather, Walmart was obligated to *preserve* all evidence relating to its use of MMA ELITE signs. It could have done so either by taking photographs or by preventing the alteration of the physical situation in its stores, analogous to the required suspension of routine document destruction policies once litigation is reasonably anticipated. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."). Walmart did not pursue either option (or any other preservation option), thereby violating its preservation obligation and destroying this critical evidence.

Walmart's argument also would not cure Walmart's failure to notify UBM that MMA ELITE signs were still in the stores after the date of the Complaint. *Silvestri*, 271 F.3d at 591; *Watchdog*, 2014 WL 1327584, at *9.

JMBM | Jeffer Mangels
Butler & Mitchell LLP

### 3.   Walmart's History of Spoliation In Other Cases Confirms That It Did Not Act Innocently Here

This is not the first case in which Walmart has committed spoliation. To the contrary, Walmart has exhibited a pattern of destroying or failing to preserve evidence critical to plaintiffs' claims against it.  As a result, Walmart has been sanctioned for its spoliation by courts around the country for at least the past 20 years.  *See, e.g.*, *Stedeford v. Wal-Mart Stores, Inc.*, No. 2:14-cv-01429-JAD-PAL, 2016 WL 3462132, *6 (D. Nev. June 24, 2016) (imposing evidentiary and adverse inference sanctions against Walmart for failing to preserve relevant physical and videotape evidence); *Abdulahi v. Wal-Mart Stores East, L.P.*, 76 F.Supp.3d 1393, 1398 (N.D. Ga. 2014) (sanctioning Walmart for "bad faith" destruction of evidence at heart of employment discrimination dispute); *Patton v. Wal-Mart Stores, Inc.*, No. 2:12-cv-02142-GMN-VCF, 2013 WL 6158467, *9 (D. Nev. Nov. 20, 2013) (sanctioning Walmart for "reckless[ly]" destroying relevant evidence); *Woodard v. Wal-Mart Stores East, LP*, 801 F.Supp.2d 1363, 1375 (M.D. Ga. 2011) (imposing adverse inference instruction based on Walmart's loss of relevant video); *Britton v. Wal-Mart Stores East, L.P.*, No. 4:11cv32-RH/WCS, 2011 WL 3236189, *13 (N.D. Fla. June 8, 2011) (finding bad faith when Walmart "intentionally let the inside video evidence be destroyed over time"); *Gaffield v. Wal-Mart Stores East, LP*, 616 F.Supp.2d 329, 339-40 (N.D.N.Y. 2009) (imposing monetary sanctions on Walmart for discarding bicycle relevant to lawsuit); *McDonald v. Wal-Mart Stores East, LP*, No. 3:07cv425, 2008 WL 153783, *6 (E.D. Va. Jan. 14, 2008) (imposing adverse inference for Walmart's destruction of physical evidence under its control); *Wilson v. Wal-Mart Stores, Inc.*, 199 F.R.D. 207, 208 (S.D. Tex. 2001) (striking witnesses and experts and ordering adverse inference instruction against Walmart for "patently duplicitous behavior" in discovery); *GTFM,*

PRINTED ON
RECYCLED PAPER
LA 33728856v1

1  *Inc. v. Wal-Mart Stores, Inc.*, No. 98 CIV. 7724 RPP, 2000 WL 335558, *3

2  (S.D.N.Y. Mar. 30, 2000) (sanctioning Walmart and noting that its "track

3  record on compliance with discovery requests has been poor both in this case

4  and in other cases"); *Empire, Inc. v. Wal-Mart Stores, Inc.*, 188 F.R.D. 478,

5  481-82 (E.D. Ky. 1999) (discussing seven cases from 1996-1999 sanctioning

6  Walmart for discovery abuses); *Greenwalt v. Wal-Mart Stores, Inc.*, 253

7  Neb. 32, 41-42, 567 N.W.2d 560 (Neb. 1997) (affirming trial court's striking

8  of Walmart's answer for refusing to produce documents ordered by court).

9      These cases dispel any notion that Walmart acted innocently in this

10  case.  Rather, Walmart's history of destroying evidence further confirms that

11  Walmart acted in bad faith here.  As explained below, evidentiary and

12  adverse inference sanctions are necessary to remediate the prejudice

13  Walmart's willful spoliation has created.

14      **D.   Walmart's Spoliation Severely Prejudices UBM**

15      Walmart's willful spoliation of evidence has severely prejudiced UBM's

16  ability to prosecute its claims.

17  ███████████████████████████████████████

18  ███████████████████████████████████████

19  Walmart has destroyed all of that evidence.  Without sanctions, Walmart

20  might try to argue to the Court or the jury that UBM cannot meet its burden

21  of proof, or that Walmart acted innocently in its use of MMA ELITE signs.

22  Given that Walmart willfully destroyed evidence it knew was critical to

23  UBM's case, it would be unfair to let Walmart make such arguments.

24      In addition, trial will be approximately two months away from the date

25  of the noticed hearing on this Motion.  Thus, UBM's ability to prepare for the

26  upcoming trial has been severely prejudiced by Walmart's willful spoliation.

27  *See Perez*, 2014 WL 12591809, at *7 (finding prejudice to moving party when

28  trial was six months after hearing on spoliation motion).

PRINTED ON
RECYCLED PAPER
LA 33728856v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1    In sum, Walmart failed to preserve – and, indeed, affirmatively

2  destroyed – critical evidence relating to UBM's claims against it.  For the

3  reasons discussed below, sanctions are necessary to level the playing field.

4

5  **V.     EVIDENTIARY AND ADVERSE INFERENCE SANCTIONS**

6  **ARE NECESSARY TO LEVEL THE PLAYING FIELD**

7       **A.     Evidentiary Sanctions are Necessary**

8    "Evidentiary sanctions may include introduction of evidence of

9  spoliation, preclusion sanctions, excluding evidence and witness testimony,

10  and taking matters deemed as admitted." *Stedeford*, 2016 WL 3462132 at

11  *6.  Such sanctions are appropriate here.

12    In *Stedeford*, for example, Walmart was sued over a slip-and-fall in

13  one of its stores. *Id.* at *1.  The plaintiff alleged she had "slipped on liquid

14  soap that had spilled on the floor in front of a self-checkout register." *Id.*

15  "An incident report, claim notes, and witness statements were taken

16  immediately after the accident." *Id.*  Eight days after the accident, plaintiff's

17  counsel sent Walmart a letter directing it to preserve relevant evidence. *Id.*

18    The evidence in the case included video surveillance of the accident

19  area, as well as the soap bottle that allegedly caused the spill. *Id.* at *2.

20  Walmart, however, "*failed to preserve video surveillance evidence and*

21  *destroyed the soap bottle* after it was on notice of [plaintiff's] reasonably

22  foreseeable claim." *Id.* at *9 (emphasis added).  Because the video and soap

23  bottle were the most direct evidence of plaintiff's claim, the district court

24  found that "any opportunity to explore the truth of the matter was destroyed

25  when Wal-Mart destroyed the evidence." *Id.* at *12.

26    As a result, the district court imposed evidentiary sanctions prohibiting

27  Walmart from arguing "an innocent explanation for the lack of video of the

28  incident" or contradicting its employees' admissions that there was liquid on

PRINTED ON

RECYCLED PAPER

LA 33728856v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

the floor in the accident area "believed to come from a soap bottle found
nearby." *Id.* at *13.  The court also ordered an adverse inference instruction.

Similarly, in *Perez*, this Court granted evidentiary and adverse
inference sanctions where the defendant failed to preserve text messages
relating to a key issue in the case.  *See* 2014 WL 12591809, at *5-10.

In this case, evidentiary sanctions are necessary for the same reasons
as in *Stedeford*.  Here, as in *Stedeford*, Walmart was on notice that the
evidence it destroyed was relevant to claims against it at the time it
destroyed that evidence.  Walmart should not be permitted to tell the jury
how it purportedly used MMA ELITE signs or displayed nearby apparel, or
argue to the jury that its use of MMA ELITE signs and apparel was innocent
or harmless, having destroyed the last remaining evidence of how its stores
actually used the signs and displayed Walmart Apparel.

Sanctions here are even more appropriate than they were in *Perez*.  In
*Perez*, the defendant arguably was not put on notice of the importance of
text messages, yet still was sanctioned for failing to preserve those text
messages.  Here, by contrast, Walmart was *specifically* put on notice by
UBM's Complaint that the use of MMA ELITE signs and display of apparel in
Walmart's stores was the critical issue in this case. ███████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
Such evidence has been permanently destroyed and can never be recreated.

Walmart might argue that UBM should have conducted its own
investigation of Walmart's 5,000 stores to determine where and how signs
were used.  That argument would fail as a matter of law.  Walmart's
obligation to preserve evidence is its own, affirmative obligation.  *See*
*Napster*, 462 F.Supp.2d at 1070 ("The obligation to retain discoverable
materials is an affirmative one") (citation omitted).  Walmart cannot relieve

PRINTED ON
RECYCLED PAPER
LA 33728856v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

itself of that affirmative obligation by trying to foist the burden onto UBM. *See Perez*, 2014 WL 12591809, at *5 ("Shippers cannot foist its legal duty to preserve discoverable evidence on others by arguing that some of that evidence may be obtained from parties not involved in this action.").

Moreover, UBM had no reasonable way of determining which of Walmart's 5,000 U.S. stores still displayed MMA ELITE signs.  And, as mentioned above, Walmart denied UBM's allegations that Walmart was continuing to use MMA ELITE signs in its stores.  [*See* Docket No. 16 at p. 3 (denying Paragraph 16).]  It would be nonsensical (and patently unfair) to require UBM to visit over 5,000 stores *after* filing its Complaint and *after* Walmart had denied that it still displayed any signs.

It also is irrelevant to Walmart's preservation obligation that UBM had discovered that Walmart displayed signs in certain stores prior to filing its Complaint.  *See Columbia Pictures*, 2007 WL 4877701, at *2 ("The destruction of evidence clearly relevant ... cannot be justified by the assumption that it's already been viewed by the plaintiffs.")

Accordingly, UBM requests that the Court impose the following evidentiary sanctions to remediate the prejudice caused by Walmart:

1.     Walmart's use of MMA ELITE signs in 2016 and 2017 should be deemed to constitute willful infringement of UBM's MMA ELITE trademark, and Walmart should be prevented from presenting any evidence, testimony, or argument that its use of MMA ELITE signs in 2016 and 2017 was not willful infringement of UBM's MMA ELITE trademark; and

2.     Walmart should be prevented from presenting evidence, testimony, or argument regarding when, where, or how it used or displayed MMA ELITE signs, or when, where, or how it used or displayed any non-licensed apparel similar in appearance and style to MMA ELITE branded apparel that was sold in its stores in 2016 and 2017.

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON RECYCLED PAPER
LA 33728856v1

### B.   Adverse Inference Sanctions Also Are Necessary

"[A] trial court also has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior." *Glover v. Bic Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). "[A] finding of 'bad faith' is not a prerequisite to this corrective procedure." *Id*. "Surely a finding of bad faith will suffice, but so will simple notice of 'potential relevance to the litigation.'" *Id*.; *Perez*, 2014 WL 12591809, at *9 (same); *accord Napster*, 462 F.Supp.2d at 1078 ("Hummer's conduct amounts to gross negligence, if not willfulness, which is sufficient culpability to justify an adverse inference.").

"[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Napster*, 462 F.Supp.2d at 1078 (citation omitted); *see also Perez*, 2014 WL 12591809, at *9 (same).

For the same reasons discussed above, adverse inference sanctions are proper in this case.

Courts around the country have imposed adverse inference sanctions on defendants who, like Walmart here, destroyed relevant physical evidence.

In *Reed*, the court held "that an adverse instruction may be appropriate" where, as here, the defendant irreparably altered physical evidence critical to the plaintiff's claims.  2016 WL 6805336, at *2.

In *Aktas*, the plaintiffs sued for claims arising out of work performed on their home.  877 F.Supp.2d at 5.  After notifying the defendants of their intent to file a claim, the plaintiffs destroyed portions of the work the

PRINTED ON RECYCLED PAPER
LA 33728856v1

1  defendants had performed (e.g., by removing sheetrock that had been
2  installed) without notifying the defendants that they were doing so.  *Id.* at 14.
3  The court found that "plaintiffs knowingly destroyed evidence" and "were
4  grossly negligent and knowingly altered and destroyed defendants' work."
5  *Id.* at 15.  The court held that adverse inference instructions were
6  appropriate.  *Id.* at 21.

7         And in *Wagner v. Sea Esta Motel I*, No. 13-81-RGA, 2014 WL 4247731
8  (D. Del. Aug. 26, 2014), the plaintiff sued for injuries allegedly incurred
9  when a wooden railing he leaned on gave way and he fell three stories.  *Id.* at
10 *1.  The defendant permitted the wooden railing – "the central piece of
11 evidence" in the case – to be lost by failing to pay the storage facility where
12 the railing was being stored.  *Id.* at *2.  The district court ordered an adverse
13 inference instruction for this spoliation of evidence.  *Id.*

14        Here, Walmart's knowing and intentional spoliation was at least as
15 willful as the spoliation in these cases.  Accordingly, UBM requests that the
16 Court give the following instructions (or any variations thereof that the
17 Court deems acceptable) to the jury at the time of trial:

18        1.      "Walmart had a legal obligation to preserve all relevant evidence
19 after being served with the Complaint.  Walmart violated this obligation by
20 intentionally destroying evidence that would have showed how Walmart was
21 using MMA ELITE signs in its stores to sell similar looking non-MMA ELITE
22 apparel.  You may infer from Walmart's destruction of this evidence that
23 Walmart intentionally used MMA ELITE signs to attract customers to
24 Walmart's similar looking non-MMA ELITE apparel."

25        2.      "Walmart had a legal obligation to preserve all relevant evidence
26 after being served with the Complaint.  Walmart violated this obligation by
27 intentionally destroying evidence that would have showed how Walmart was
28 using MMA ELITE signs in its store to sell similar looking non-MMA ELITE

PRINTED ON
RECYCLED PAPER
LA 33728856v1

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

apparel.  You may infer from Walmart's conduct that the evidence destroyed would have been favorable to UBM's case and harmful to Walmart's case."

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, UBM respectfully requests that the Court impose the evidentiary and adverse inference sanctions set forth in Part V.

DATED:  July 5, 2017          JOEL D. DEUTSCH
                             JON A. WEININGER
                             ANDREW I. SHADOFF
                             JEFFER MANGELS BUTLER & MITCHELL LLP

                             /s/ Jon A. Weininger
                             _____
                                  JON A. WEININGER
                             Attorneys for Plaintiff ULTIMATE BRAND
                             MANAGEMENT, LLC

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

PRINTED ON
RECYCLED PAPER
LA 33728856v1